R. STEVEN GESHELL, 3349
6600 Kalanianaole Hwy., Ste. 116
Honolulu, HI 96825
Tel. No. 808.396.7701
Fax No. 808.395.8556
E-Mail: geshlaw@lava.net

Attorney for Defendant
 Thom Shiraishi

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL NO. 04-00678 SPK KSC |
| | ) | |
| Plaintiff, | ) | DEFENDANT THOM SHIRAISHI'S |
| | ) | AMENDED PROPOSED FINDINGS |
| vs. | ) | OF FACT AND CONCLUSIONS OF |
| | ) | LAW; APPENDIX A |
| THOM SHIRAISHI; BARBARA | ) | |
| SHIRAISHI; DEPT. OF BUDGET | ) | TW: April 4, 2006 |
| AND FISCAL SERVICES, REAL | ) | |
| PROPERTY TAX DIVISION, CITY | ) | |
| AND COUNTY OF HONOLULU, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

shiraishi\proposed amended fof col 040606

### DEFENDANT THOM SHIRAISHI'S
### AMENDED PROPOSED FINDINGS OF FACT AND
### CONCLUSIONS OF LAW

Pursuant to the Pretrial Order, Defendant Thom Shiraishi hereby submits the

Amended Proposed Findings of Fact and Conclusions of Law which are attached

hereto, marked Appendix A.

DATED: Honolulu, Hawaii, this 25th day of April, 2006.


  /s/  R. Steven Geshell
R. STEVEN GESHELL
Attorney for Defendant
 Thom Shiraishi

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL NO. 04-00678 SPK KSC |
| | ) | |
| Plaintiff, | ) | DEFENDANT THOM SHIRAISHI'S |
| | ) | AMENDED PROPOSED FINDINGS |
| vs. | ) | OF FACT AND CONCLUSIONS OF |
| | ) | LAW |
| THOM SHIRAISHI; BARBARA | ) | |
| SHIRAISHI; DEPT. OF BUDGET | ) | TW:  April 4, 2006 |
| AND FISCAL SERVICES, REAL | ) | |
| PROPERTY TAX DIVISION, CITY | ) | |
| AND COUNTY OF HONOLULU, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT THOM SHIRAISHI'S AMENDED
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter came on before The Honorable Samuel P. King for trial on

April 4, 2006.  Plaintiff was represented by Harry Yee, Assistant U. S. Attorney.

Defendant Thom Shiraishi (hereafter, "Defendant") was represented by R. Steven

Geshell.  Defendant City and County of Honolulu had previously been dismissed

pursuant to stipulation.  The case was tried to the Court; and, the Court being fully

advised in the premises, makes the following Findings of Fact and Conclusions of

Law.

APPENDIX A, Page 1

## FINDINGS OF FACT

1.     On or about July 20, 1978, Plaintiff loaned Defendant and his then-wife, Barbara Shiraishi, the sum of $98,000 pursuant to a promissory bearing 5% per annum interest.

2.     Said July 20, 19878 loan was secured by a real estate mortgage on a four-acre parcel, legally described in the mortgage, on the subject property in Waianae, Hawaii.

3.     Said mortgage dated July 11, 1079, was duly recorded in the Bureau of Conveyances of the State of Hawaii.

4.     On or about March 29, 1989, the Defendant and his wife signed another promissory note for the sum of $139,216.45 bearing interest at 5% per annum.

5.     The aforesaid promissory note was a refinancing of Loan No. 41-01 and was a farm ownership loan.

6.     Farm Ownership Loan No. 41-01 became Loan No. 41-06 when it was refinanced in 1989.

7.     Farm Ownership Loan No. 41-06 was refinanced in 1996 and changed to Loan No. 41-09.

APPENDIX A, Page 2

8.    Farm Ownership (F. O.) Loan No. 41–09 was refinanced in 1999 and became Farm Ownership Loan No. 41-12.

9.    The refinancing of the farm ownership loans are represented by promissory notes in Exhibits 101f, 101g, and 101h.

10.    On or about October 30, 1986, Plaintiff again loaned Defendant and his wife the sum of $85,000 on a farm ownership loan, which loan became Loan No. 41-03 as a farm ownership loan.

11.    F. O. Loan No. 41-03 was refinanced by the Defendants Shiraishi and became Loan No. 41-08 on March 29, 1989.

12.    On or about April 11, 1996, the F. O. Loan No. 41-08 was refinanced and became F. O. Loan No. 41-11.

13.    On or about April 11, 1996, F. O. No. 41-11 was in the amount of $122,947.94.

14.    F. O. Loan No. 41-11 was satisfied by approved debt write-off on December 28, 1999.

15.    Exhibit 102c is a copy of the promissory note in the sum of $85,000 bearing interest at 5% per annum, dated October 30, 1986.

16.    Said farm ownership loan was made pursuant to a settlement in Civil No. 85-0401 in the First Circuit Court of the State of Hawaii and in Civil No. 85-

APPENDIX A, Page 3

0360 in the United States District Court for the District of Hawaii, as shown in Exhibits 224 and 227.

17.     The $85,000 farm ownership loan dated October 30, 1986, was secured by a real estate mortgage by Defendants Shiraishi to the Plaintiff on the subject four-acre parcel in Waianae, Hawaii, as evidence by Exhibit 102d, which mortgage was recorded in the Bureau of Conveyances.

18.     Exhibit 102e is a copy of the Shiraishi reamortized promissory note dated March 29, 1989, in the sum of $85,000.

19.     Exhibits 102f is a copy of the reamortized promissory note dated April 11, 1996, in the sum of $122,947.94, which encompassed Loan No. 41-08, the $85,000 farm ownership loan.

20.     F. O. Loan No. 41-09 was refinanced and became Loan No. 41-12 on December 28, 1999, at which time the principal amount of that loan was $230,288.22 according to Exhibit 101c.

21.     Defendants Shiraishi were are default on repayment of the farm ownership loans as aforesaid and have been for many years.

22.     In addition to the farm ownership loans, Plaintiff loaned Defendants Shiraishi $200,000 as a farm operating loan on or about October 30, 1986, pursuant to a settlement in the federal and state cases previously described in Civil

APPENDIX A, Page 4

No. 85-0360 in this court, and Civil No. 85-0401 in the Circuit Court of the First Circuit, State of Hawaii, all as shown in Exhibits 224 and 227.

23.    F. O. Loan No. 44-04 was refinanced on March 29, 1989, and became Loan 44-07 in the sum of $199,970.58.

24.    Said Loan No. 44-07 was refinanced on April 11, 1996 and became Loan No. 44-10, in the principal sum of $196,663.64.

25.    On or about December 28, 1999, Loan No. 44-10 was refinanced, with a partial debt write-down of $101,112.42, and became Loan No. 44-13 in the sum of $129,750.52.

26.    Exhibit 103d is a copy of the promissory note in the sum of $200,000 dated October 30, 1986, for the operating loan.

27.    The Defendants mortgaged the subject property to the Plaintiff on October 30, 1986, which mortgage was duly recorded in the Bureau of Conveyances of the State of Hawaii as shown in Exhibit 103e.

28.    The reamortized loans for the operating loans are in evidence, being Exhibits 103f, 103g, and 103h.

29.    Defendants Shiraishi are in default on paying the promissory notes and the mortgages securing said promissory notes on the farm operating loans and

APPENDIX A, Page 5

have been in default on repaying said debt for a number of years, as shown in Exhibits 103, 103a, 103b, and 103c.

30.    On or about December 28, 1999, Defendant Shiraishi signed a shared appreciation agreement as evidenced by Exhibit 105, in consideration of which the Farm Service Agency (FSA) wrote-down farm loan program loans and Defendant agreed to pay FSA a portion of the amount that the real estate property described in those mortgages increased in value between the market value as of the date of that agreement, December 28, 1999, and the market value at the end of the ten-year period, which would be the year 2009 if the notes in ¶ 5 of that document are paid or satisfied, Defendant stops farming, or his notes are accelerated, or when the property is sold or conveyed.

31.    Defendant also executed a Security Agreement and Financing Statement in favor of the Plaintiff covering personal property and crops dated September 12, 2001, and the Financing Statement was amended as shown in Exhibit 109.

32.    Defendant is in default on paying the Security Agreement and Financing Statement.

33.    Defendant was qualified and approved for Homestead Protection under 7 U.S.C. § 2000, and 7 C.F.R. § 1951.911, when the Homestead Protection Agreement was signed on January 30, 2004, as evidenced by Exhibit 212.

34.    On July 17, 2001, Defendant applied for Homestead Protection on the four acres located at 86-479 Paheehee Road, Waianae, HI, for TMK No. 8-6-024-004, the six greenhouse structures thereon and one emergency generator enclosure.

35.    On August 3, 2001, Defendant advised the FSA of his ex-wife's address in Nevada, as shown in Exhibit 203.

36.    On April 11, 1991, Defendant and Barbara Lee Shiraishi were divorced in the Family Court of the First Circuit, as shown in Exhibit 204.

37.    On April 3, 2002, the U. S. Department of Agriculture notified Defendant that because of his default, the FSA was electing to accelerate the entire balance due on the mortgages and notes previously described above (Exhibit 207).

38.    On June 25, 2002, the FSA loan manager advised the loan director that Defendant was willing to convey the property under the Homestead Protection Act but she recommended continuing foreclosure but considering the voluntary conveyance in conjunction with the Homestead Protection processing and then settle the debt for the remaining balances (Exhibit 208).

APPENDIX A, Page 7

39.    On January 12, 2004, Defendant explained the errors and problems that he saw with the proceedings and trying to resolve it.

40.    On January 22, 2004, Ms. Greer of FSA wrote Defendant, determining that Defendant was eligible for Homestead Protection.

41.    On May 26, 2004, Ms. Greer of FSA advised Defendant that he had been approved for Homestead Protection and that his lease payments would be $6,000 per year payable at $500 per month, and that Defendant was responsible to convey clear title to the property to FSA, including title insurance, and Defendant was responsible for all expenses necessary to make such conveyance and that he should open an escrow to process the transferring of property, including obtaining a deed from his ex-wife Barbara.

42.    On May 25, 2004, FSA approved Defendant's request to convey the property to FSA under the Homestead Protection provisions of the federal act (Exhibit 213).

43.    On June 10, 2004, FSA advised Defendant that all that remained to come within Homestead Protection was for Defendant to convey the property to Plaintiff and get the lease back for five years with an option to purchase but, since Ms. Greer of FSA was in Guam and would not return until June 21, 2004, he should make an appoint with her (Exhibit 214).

APPENDIX A, Page 8

44.    On June 26, 2004, Defendant requested that a form be sent to Defendant's ex-wife, Barbara, approving the Homestead Protection and releasing her from liability (Exhibit 215).

45.    On June 30, 2004, Mr. Flores of FSA advised Defendant that his appeal of the denial of the Homestead Protection was unnecessary because his account was not being foreclosed (Exhibit 216).

46.    On June 24, 2004, FSA informed Defendant that they had a form signed by Defendant's ex-wife on the offer to convey the property and that Defendant would be contacting her to verify that her signature was on the form (Exhibit 217).

47.    Defendant further advised FSA, on June 24, 2004, that he was not going to set up an escrow until he could contact his ex-wife to verify her signature that she is willing to transfer the property (Exhibit 217).

48.    Defendant now has a quit-claim deed from his ex-wife to him, quit-claiming her interest to Defendant (Exhibit 218).

49.    Defendant contends that, contrary to Plaintiff's evidence, there is due on the farm and operating loans the total principal and interest of $378,751.80 (Exhibit 220).

APPENDIX A, Page 9

50.    Defendant further contends, per Exhibit 220, that there is a difference of $277,962.17 on the Shared Appreciation Agreement between what the Plaintiff and Defendant assert are due on that agreement.

51.    Defendant contends that the Plaintiff short-changed him $115,000 on the farm ownership loan that they agreed to supply him in 1986.

52.    It is inequitable for the Plaintiff to now foreclose when Defendant was given a short period of time in which to deed the property over to the Plaintiff under the Homestead Protection Act.

53.    He who seeks equity must do equity.

54.    The Plaintiff is precluded from foreclosing the mortgages under 7 U.S.C. § 2000, where the Defendant applied for and met the eligibility requirements under the Homestead Protection sections of the statute.

55.    The Plaintiff has no discretion to disregard and fail to follow its own statutes and regulations.

56.    The Plaintiff has acted with unclean hands in the facts giving rise to this case in the following particulars:

    (a)    Delaying for over two years favorable action upon Defendant's application for Homestead Protection;

(b)     Referring Defendant's case to the U. S. Attorney's office for foreclosure while Defendant's application for Homestead Protection was pending determination of eligibility and acceptance;

(c)     After Defendant's Homestead Protection application was granted, Defendant was given about one day to comply with the demand of Plaintiff's agent to create an escrow and deposit a deed for conveyance;

(d)     Instituting foreclosure before the Homestead Protection process had been completed;

(e)     Violating 7 U.S.C. § 2000(b) by trying to dispossess Defendant through this foreclosure action when he had been determined to be qualified for Homestead Protection; and

(f)     Claiming an amount due under the notes and mortgages exceeding what is actually due.

57.     Defendant is ready, willing, and able to proceed with closing the Homestead Protection transaction by deeding the property to Plaintiff with a lease-back.

58.     Plaintiff failed to plead nor prove that Plaintiff complied with 7 C.F.R. § 1951.907(c), which requires a 90-day notice to the borrowers by certified mail, return receipt.

APPENDIX A, Page 11

59.    According to 7 C.F.R. § 1951.907(d), Defendant's account should not be liquidated or foreclosed upon until the borrower has an opportunity to appeal adverse decisions.

60.    Plaintiff has not complied with 7 C.F.R. § 1951.907(d).

61.    Defendant appealed the adverse decision on foreclosing and acceleration, and there was no decision on such appeal.

62.    In the Shared Appreciation Agreement, Exhibit 105, the Plaintiff wrote down the total indebtedness between the parties by the sum of $246,898.36 as of December 28, 1999 (Exhibit 105).

63.    Under the Shared Appreciation Agreement, Exhibit 105, Defendant agreed to pay FSA a portion of the amount that the four-acre farm increases in value between the market value as of December 28, 1999 and the market value at the end of the ten-year period to December 28, 2009, or the sooner of one of the following events:

(a)    The notes described in ¶ 5 totaling, at that time, $360,038.74, are paid in full or satisfied;

(b)    Defendant stops farming;

(c)    The notes are accelerated; or

(d)    When the farm is sold or conveyed prior to December 28, 2009.

APPENDIX A, Page 12

64.     When those events occur in the foregoing Finding, the Plaintiff is entitled to 50% of the appreciation in the market value of the Defendant's farm under ¶ 9(B) of said Exhibit 105.

65.     According to Ms. Greer's testimony, there is currently due on the Loan No. 41-12, the Farm Ownership Loan, the sum of $295,925.07, which includes both principal and interest.

66.     According to Ms. Greer, on Loan No. 41-13, the Operating Loan, there is currently due the sum of $170,399.76, which includes both principal and interest.

67.     Defendant is in default on the foregoing Farm Ownership and Operating Loans.

68.     Both the Farm Ownership Loan and the Operating Loan described in ¶ 5 of Exhibit 105 were written down from the amounts stated in ¶ 2 of Exhibit 105.

69.     The write-down amount totaling $246,898.36 has not been written off by the Government but is held in abeyance pending determination of the events occurring under the Shared Appreciation Agreement, Exhibit 105.

70.     At last appraisal, the Shiraishi farm was valued at $264,000 (Exhibit 221).

APPENDIX A, Page 13

71.     Mr. Shiraishi testified that the farm was valued at $190,000 in 1999 according to his information.

72.     The amounts claimed by the Plaintiff in the loans identified in ¶ 5 of Exhibit 105 include both accrued interest which became principal, and interest on that amount at 5% per annum.

73.     As such, the amounts claimed by the Plaintiff on Loans No. 41-12 and 44-13 are applying compound interest because the Government is seeking interest on interest.

74.     Since the write-down amount in ¶ 4 of Exhibit 105 totaling about $247,000 has not been discharged or extinguished, Defendant was not disqualified from being eligible for farm homestead protection since the debt was not previously forgiven as evidenced by the language in Exhibit 105 and from Exhibit 112, per 7 C.F.R. § 1956.57(l).

75.     The Homestead Protection Agreement in Exhibit 212 concerning the subject property required the Defendant to enter into a lease which was attached to that document.

76.     The lease proposed was for five years at an annual rent of $6,000 per year (Exhibit 212).

APPENDIX A, Page 14

77.    The offer to convey security by Defendant Shiraishi and his ex-wife required the Defendants to convey the farm property to the Farm Service Agency (FSA) for a credit equal to the value of the property less prior liens, in connection with conveyance of satisfactory title to the Agency (Exhibit 212).

78.    The offers to convey also required the Defendants to remove junior and prior liens except the agency liens on the title except those approved by the FSA in writing (Exhibit 212).

79.    The Defendants further agreed in Exhibit 212 to pay the expenses incidental to such conveyance such as the title examination, survey, revenue stamps, notary, and recording fees, plus the cost of insurance on the property, the cost of title insurance if required by the Agency, together with the taxes and assessments and any liens approved by the Agency for which payment is necessary to clear title (Exhibit 212).

80.    The Government approved such offer to convey by signature of Rubin Flores on May 25, 2004, who was then the State Executive Director of FSA (Exhibit 212).

81.    Exhibit 212 proves that the offer to convey security did not require the Defendant to set up an escrow in said documents.

APPENDIX A, Page 15

82.    The letter of Pixie Greer dated May 26, 2004 instructs Defendant Shiraishi to contact an escrow company to begin the process of transferring the property, which will also include obtaining a deed from Barbara, Defendant's Ex-wife (Exhibit 213).

83.    The letter dated May 25, 2004 from Mr. Bazzell to Ms. Greer was not sent to the Defendants (Exhibit 213).

84.    That document, Exhibit 213 dated May 25, 2004, instructed Ms. Greer to obtain title free of encumbrances and required the borrower to provide a title policy.

85.    Mr. Bazzell's letter of May 25, 2004 did not require creation of an escrow, but Ms. Greer's letter the next day in Exhibit 213 advised the Defendant to contact an escrow company to begin processing the title transfer and obtaining title insurance.

86.    Defendant testified that he contacted two title and escrow companies and neither advised him that an escrow was needed for this transaction.

87.    Being a farmer and not learned in the laws of conveyancing, Defendant decided to accept the word of the independent escrow officer and not the word of the Farm Service Agent requiring creation of an escrow.

88.    The Defendant and Plaintiff's agents were not communicating effectively regarding the requirement for an escrow.

89.    It is not necessary to create an escrow to convey title by deed, but only deliver the recordable deed to the grantee, the FSA.

90.    Under Exhibit 212, there was no requirement for creation of an escrow.

91.    The requirement of an escrow for this transaction was over and above what was provided for in Exhibit 212 in the offers to convey security signed by Defendants in 2004 and Mr. Flores on May 25, 2004.

92.    Mr. Bazzell informed Defendant by letter dated June 10, 2004, that he should contact Ms. Greer to conclude the Homestead Protection transaction when she returns from Guam after June 21, 2004 (Exhibit 214).

93.    On June 26, 2004, Defendant informed Ms. Greer by his letter that he was in the process of selecting the escrow agent to complete the transaction without incurring unnecessary expense and services, and acknowledged that he had been informed that if he did not open an escrow account by July 2, 2004, FSA would proceed with collection efforts (Exhibit 215).

APPENDIX A, Page 17

94.     Defendant advised FSA that he disagreed with the collection effort while the Homestead Protection Application had been approved, and interpreted such pursuit of collection effort to be an adverse decision (Exhibit 215).

95.     Defendant, therefore, appealed the adverse decision to proceed with collection on the account while he was attempting to comply with the Homestead Protection Agreement and convey the property to the Plaintiff (Exhibit 215).

96.     Defendant was given until July 2, 2004 to accept the offer to convey the property by opening an escrow to effect the property transfer (Exhibit 216).

97.     As previously found, there was no such requirement of opening an escrow in the offer to convey property in Exhibit 212; therefore, the requirement by the Plaintiff of opening an escrow was not valid.

98.     Since the previous debt had not been forgiven as shown in Exhibit 105, the Plaintiff's position that Defendant was somehow disqualified for a two-year period to become eligible for Homestead Protection is incorrect.

99.     In the 1986 settlement between the Bank of Hawaii, Shiraishi, and the Plaintiff, Plaintiff was to make two loans to the Defendant, both in the sum of $200,000.

100.    One loan was for an operating loan of $200,000 which is shown in Exhibit 103d.

APPENDIX A, Page 18

101.   Under that Operating Loan, the Plaintiff disbursed $123,255 on October 27, 1986 (Exhibit 229); and the balance of the payments under that loan were disbursed periodically from March of 1987 through March of 1989 (Exhibit 229).

102.   Defendant testified that because the Operating Loan proceeds were not disbursed all at once, his farm operation was doomed for failure since he could not buy the necessary seed and supplies to make his farming operation productive.

103.   Defendant further testified, and Exhibit 225 confirms, that Defendant was to obtain in the settlement of the prior litigation between the Bank of Hawaii, Shiraishi, and the Plaintiff, a Farm Ownership Loan of $200,000 in addition to the Farm Operating Loan of $200,000 (Exhibit 225).

104.   The Plaintiff did not in fact loan Defendant the $200,000 Farm Ownership Loan, but only $85,000 as shown in Exhibit 102c.

105.   The Plaintiff failed to loan the Defendant an additional $115,000 under the Farm Ownership Loan part of his settlement agreement in the prior litigation as shown in Exhibit 225.

106.   Defendant testified that because he did not get the Farm Ownership Loan proceeds of $115,000, he was unable to rebuild his farm from the effects of the weather, Hurricane Iwa, and other difficulties that he had.

APPENDIX A, Page 19

107.   As a result of the Plaintiff's failure to fully fund the Farm Ownership

Loan, Defendant claimed that he was unable to successfully make his farm

productive and, therefore, unable to pay the mortgage payments as they came due,

resulting in his default.

108.   The title report on the subject property was obtained by the Plaintiff

showing no prior or junior liens as of the date of Ms. Greer's memo to Mr. Bazzell

dated April 1, 2004 (Exhibit 222).

109.   Ms. Greer advised Mr. Bazzell that a warranty deed would be

prepared for all title holders by the closing agent subject to agency approval in her

letter of April 1, 2004 (Exhibit 222).

110.   Ms. Greer recommended accepting the offer to convey security and

the request for Homestead Protection on the contingency that borrowers pay all the

closing costs and provide title insurance at closing (Exhibit 222).

111.   Ms. Greer advised Mr. Bazzell that it was in the best financial interest

of the Government to accept the voluntary conveyance to the Government and to

refer the settlement of the remaining deficiency back to the U. S. Attorney's Office

for legal action (Exhibit 222).

112.   The first time Defendant saw Exhibits 212 and 222 was when the

defense got to look at the requested discovery in this litigation.

APPENDIX A, Page 20

113.   Defendant did not get Exhibit 216 from the Plaintiff's agent until on or after July 2, 2004.

114.   Defendant goes to his post office box to check the mail periodically, so he got Exhibit 216 after the fact.

115.   The Plaintiff delayed in their action on the Homestead Protection agreement from January of 2004 until May of 2004.

116.   Plaintiff, in Exhibit 214, approved a delay in the conclusion of the Homestead Protection Agreement from June 10, 2004 until after June 21, 2004 because Ms. Greer was in Guam, but the Defendant had much less time to open an escrow, which was not really required anyway.

## CONCLUSIONS OF LAW

1.     It is inequitable for the Plaintiff to now foreclose when Defendant was ready, willing, and able to furnish the documents to complete the Homestead Protection process.

2.     He who seeks equity must do equity.

3.     The Government is prohibited from foreclosing and instead the Plaintiff is ordered to proceed with completion of the Homestead Protection

APPENDIX A, Page 21

program for Defendant by completing the conveyance and lease-back to Defendant for the five-year period.

4.     The loan amounts claimed by the Plaintiffs under Loans No. 41-12 and 44-13 on the Shared Appreciation Agreement in Exhibit 105 violate HRS § 478-7 by containing compound interest.

5.     Plaintiff is not entitled to recover compound interest from the Defendant on Loans No. 41-12 and 44-13.

6.     The debt amount was not forgiven in the Shared Appreciation Agreement in Exhibit 105, ¶ 4, so therefore Defendant was not disqualified under Exhibit 112 for Homestead Protection.

7.     No escrow was required by Exhibit 212; and, therefore, the requirement of such escrow by the Plaintiff was not valid.

8.     Since the loans were not made in accordance with the settlement agreement as evidenced in Exhibits 223 - 227, Defendant's farm was not productive; and, therefore, he fell in default on the loans, resulting in this foreclosure.

9.     Under these circumstances and considering the equities of the situation, the foreclosure action is not justified and, therefore, must be dismissed.

APPENDIX A, Page 22

10.     The Plaintiff's complaint be dismissed at Plaintiff's cost, and that the Defendant recover his costs and attorney's fees for defending this action.

11.     Defendant's attorney shall submit a fee application within 20 days of this date, and Plaintiff will have ten days thereafter in which to object to said request for attorney's fees and costs for Defendant.

DATED:  Honolulu, Hawaii, this ___ day of _____, 2006.

IT IS SO ORDERED AND ADJUDGED.


_____
JUDGE OF THE ABOVE-ENTITLED
COURT