IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL NO. 04-00678 SPK KSC |
| | ) | |
| Plaintiff, | ) | AFFIDAVIT OF DEFENDANT |
| | ) | THOM SHIRAISHI |
| vs. | ) | |
| | ) | EXHIBITS "A" - "E" |
| THOM SHIRAISHI; BARBARA | ) | |
| SHIRAISHI;DEPT. OF BUDGET | ) | |
| AND FISCAL SERVICES, REAL | ) | |
| PROPERTY TAX DIVISION, CITY | ) | |
| AND COUNTY OF HONOLULU, | ) | |
| | ) | |
| Defendants. | ) | |

_____

AFFIDAVIT OF DEFENDANT THOM SHIRAISHI

| | |
|---|---|
| STATE OF HAWAII | ) |
| | )  SS. |
| CITY AND COUNTY OF HONOLULU | ) |

THOM SHIRAISHI, being first duly sworn upon oath, deposes and says:

1. Defendant THOM SHIRAISHI is appearing pro se in this matter.

2. That he has personal knowledge of matters hereinafter stated and does hereby make this affidavit in support of Defendant's petition for a Temporary Restraining Order.

3. On November 16, 2004, while the Defendant was attempting to pursue his appeal rights under USDA's administrative appeals process for adverse decisions of USDA's/Farm Service Agency(hereinafter referred to as FSA) officials refusal to provide the Homestead Protection Program after de-

termining the Defendant eligible on September 14, 2001
as mandated by 7C.F.R. § 1951.911 and within the time frames
provided by 7 C.F.R. § 1910.4, Assistant U.S. Attorney Harry
Yee(hereinafter referred to as Mr. Yee) would file an unau-
thorized frivolous foreclosure action.

      4.  Frivolous and prohibited by USDA's regulations,
and confirmed by the courts and appeal court. Before foreclosure
is pursued the Defendant must be provided with written notice of
his right to appply for deferral relief as foreclosure is driven
due to a monetary default.

      5.  This requirement of notice and the opportunity to
be heard is provided by 7 USCS § 1981a and has  been addressed
in 7 U.S.C.A. §§ 1921 et seq. and U.S.C.A. Cost. Amends 5, 14.

      6.  Curry v. Block (class action) 738 F.2d 1556, C.A.
11 (Ga.) set a precedent under 7 USCS § 1981a, that the farmer
must be provided notice not only at beginning of the production
season, when evaluating and reviewing a farmers past production
records, when a deficiency notice is provided and when any ac-
celeration notice is sent.  FSA never provided any notice when
provided with a delinquency notice, nor when two notice of in-
tent to accelerate were sent, when providing notification of
acceleration, before requesting an unauthorized judicial fore-
closure request to the OGC on 26 Aug 02 nor before filing an un-
authorized frivolous foreclosure on 16 Nov 04.

      7.  Cases addressing Plaintiff's protection of notice
and opportunity to be heard;

          1.  Chandler v. Block (1983, WD Mo) 589 F. Supp 876
          2.  United States v. Servaes 608 F. Supp 755 (1985
             WD Mo)

3.   Allison v. Block 723 F.2d 631 (8th Cir 1983)

4.   Ramey v. Block 738 F.2d 756 @ 763 (6th Cir 1984)

5.   William v. Buts (No 176-153, SD. Ga (Oct 7, 1977)

6.   Coleman v. Block AL-83-47-CV (S.D. Dak May 1983)

7.   Jacoby v. Shuman (1983, ED Mo) 568 F. Supp 843)

8.   U.S. v. Wynn 528 F.2d 1048, C.A. 5 (Ga) March 18, 1976

9.   Shick v. FmHA of USDA (1984, CA 1 Mass) 748 F. 2d 35

8.   7 C.F.R. § 11.1 (2003); An agency's failure to issue a decision or otherwise act becomes an adverse decision if the act is not performed within the time frames specified by agency program statutes or regulations (7 C.F.R. § 1910.4)

9.   Before FSA or Mr. Yee could file for a judicial foreclosure must follow and abide by the procedures provided within the federal regulations governing USDA's services and programs. 7 C.F.R. § 1951.907 (d); The government has no discretion in not following its own regulations.

10.   The U.S. Constitution of procedural due process rights, Amend. V, note 86 & 87, and the following regulations provide a protection of Defendant's due process rights under USDA's administrative appeals due process rights. FSA, Harry Yee and Judge King denied the Defendant of USDA's appeals process, violated his Consitutution due process rights under 7 C.F.R. § 1910.3 (c) and his Civil Rights under 7 C.F.R. § 1901.202.

11.   On June 7, 2001, FSA confirmed that Defendant had applied for the Homestead Protection. 7.C.F.R.1900.56(a)

provides; a written notification of any adverse decision
within 15 days of such action.

    12.  7 C.F.R. § 780.5; To the extent practicable, no
later than 10 business days after an agency decision maker ren-
ders an adverse decision that affects a participant, FSA <u>will</u>
provide the participant notice of the adverse decison and
available appeal rights. This is also provided in 7 USCS § 6994
(Notice and opportunity for hearing)

    13.  7 C.F.R. § 1910.6(a); If an eligibility for de-
termination if not completed within 30 days, FSA <u>must</u> provide
in writing of the reason for delay.

    14.  7 C.F.R. § 1910.4; Provides that eligibility
determination <u>must</u> be completed within 30 days of application,
Defendant's application for Homestead Protection was confirmed
as June 7, 2001. FSA did not make their determination that the
Defendant was eligible on July 2001 as required by regulation,
but made their determination on September 14, 2001, and failed
to notify the Defendant of his eligibility until October 24, 2001.

    15.  7 C.F.R. § 1910.6(b) reflects FSA's action as
this regulation provides that stalling or reflecting a lack of
action is an adverse decision.

    16.  7 C.F.R.§ 1951.907(d); The government has no
discretion in not following its own regulations.

    17.  FSA has thus far not complied with item 11, 12
13 or 14 and their actions are provided by items 15 and 16.

18.   7 C.F.R. § 1910.4 provides that if a borrower is determined eligible for services or programs, an approval/ disapproval determination must be completed within 30 days, for a total of 60 days from receipt of application. Defendants application was confirmed on June 7, 2001, therefore and approval/disapproval determination must be completed by August 6, 2001 ( Jun 7-Aug 6=60 days). Approval of the Homestead Protection Program is provided  by two documents, the Homestead Protection Program Agreement and the Offer to Convey Security. FSA will approve the Homestead Protection Program Agreement, not on August  6, 2001 as mandated by 7 C.F.R. § 1910.4, but on Janurary 30 , 2004, 997 days or over 2 years and 4 months, rather than within the 60 day time frame required by regulation.

19.   The Offer to Convey Security is not approved on August 6, 2001 as mandated by 7 C.F.R § 1910.4 or 60 days after application, but is approved by FSA State Executive Director, on May 25, 2004, 1,083 days or 12 days short of three years.

20.   Rather than complying with regulations 7 C.F.R. § 1951.911  in processing the Homestead Protection documents after determining the Defendant eligible  and within the time frames mandated by & C.F.R. § 1910.4, FSA was processing documents for acceleration and foreclosure for approval. The documented proof is provided in Defendant's Complaint filed in State Court Civil No. 06-1-1833-10.

21.   FSA will concoct unauthorized recommendations that included the Department of Justice to accept voluntary

5

conveyance, process the Homestead Protection Program, and
will have the final determination whether the Defendant would
be provided the Homestead Protection.  These recommendantions
would circumvent the instructions and procedures provided in
7 C.F.R. § 1951.911 that is specific that FSA will make the de-
termination whether the Defendant will be provided the Home-
stead Program and will process its own documents.

22.  FSA's conspiracy is to deny the Homestead Pro-
tection they have determined the Defendant eligible for and
real intent is to sell his property without authorization as
prohibited by regulations and illegally.  FSA has no discretion
to ignore its own regulations as provided by regulation noted
in Item15.  No federal agency, (United States Department of
Agriculture) may transfer, assign, delegate or recommend their
servicing and processing of their programs  to another federal
agency, in this instant the United Stated Department of Justice.
The United States Department of Justice (hereinafter referred
to as the DOJ) could not process any of FSA's recommendation or
process the required documents from the simple fact they could
not sign  as the approval official, short of forging signatures.
Furthermore, the DOJ has no authority to determine if an appli-
cant applying for a program from the USDA/FSA will be provided
or not as that authority lies with the agency providing those
services or programs.

23. The conspiracy becomes clearer as FSA will not
refer Defendant's account to the DOJ shortly after determined
eligible as implied in a meeting on July 23, 2001 or as pro-

6

vided in FSA's letters dated July 24, 2001 and October 24, 2001, but shortly after requesting the USDA's Office of the General Counsel (OGC) to approve a unauthorized judicial fore-closure on August 26, 2002, near a year later after determining the Defendant eligible for Homestead Protection on September 14, 2001.

24.  FSA's requesting the OGC to approve their un-authorized judicial foreclosure before providing the required notification of intent to foreclose and before the Homestead Protection  issue is resolved violated Items 11,12,13, and 14. FSA's actions are provided in Items 15 and 16.

25.  FSA also refused to abide with 7 C.F.R. § 1951.907(c)(3); 1962.17(b)(2)(i)(2003); If a delinquent FSA borrower has a pending application for loan servicing (homestead Protec-tion), the borrower is protected from attempts by FSA to collect against the security property. FSA's refusal to provide the required notice is provided in Items 5,6 and 7.

26.  Before foreclosure is pursued the required notice of Defendant's right to apply for deferral relief must be pro-vided as foreclosure is driven by a monetary default and is ad-dressed in Items 5 and 6.  FSA also failed to follow is own re-gulations in making their adverse decision as provided in Items 11 and 12.

27.  While Item 25 provides that foreclosure is pro-hibited while Defendant's Homestead Protection is pending, FSA has filed a Claims Collection Litigation Report(CCLR) with the DOJ, on June 25,2002 for Foreclosure before the OGC re-

quests the U.S. Attorney's Office in Honolulu to proceed with foreclosure, dated  August 29, 2002, two montths before the OGC approves FSA's unauthorized foreclosure.

28. As provided in Item 22, the DOJ has no authority to address any of FSA's recommendations of accepting volunrary conveyance, process the Homestead Protection documents, to determine if the Defendant will be provided the Homestead Protection or its latest request prohibited by regulations, a judicial foreclosure.

29.  The DOJ will contact the Defendant in November 2002, and inform the Defendant that the Homestead Protectrion was not available and pursued to sell the Defendant's property without filing for a judicial foreclosure, therefore there was not foreclosure judgment, did not possess the Defendant's title to the property  nor in possession of a power of sale.

30.  After the Defendant obtained the Homestead Protection regulation and discovered that the DOJ had no authority to be involved, provided FmHA Instruction 1951.911 or 7 C.F.R. § 1951.911 to the DOJ, who still refused to curtail their attempts to sell Defendants property for a year, before referring Defendant's account back to FSA, confirmed by FSA's letter dated December 31, 2003, confirming the unauthorized action of the DOJ with the following statements, "Our office has been informed that the sale of your property has cancelled. The U.S. Attorney's office has referred your account back to the Farm Service Agency (FSA) to process your request for Homestead Protection". FSA now admits it can process its own documents and their referring the Defendant's  account to the DOJ to process their fraudulent

recommendantions and to pursue a judicial foreclosure was all a scam and part of their conspiracy to deny the Homestead Protection and sell his property.

31. What more proof is required that FSA's actions provided prior was all a scam, as the DOJ could not accept voluntary conveyance or process the Homestead Protection documents from the simple fact, the DOJ could not sign the documents as the approving official from the United States Department of Aggirculture, was unable to make a determination whether the Defendant would be provided a United States Department of Agricultures program and lastly was unable to file for a judicial foreclosure or in summary, none of the recommendations nor a judicial filing for foreclosure.

32. The actions of the FSA and the DOJ from the period of August 6, 2001 when regulations mandated that the Homestead Protection be provided has cost the Defendant the loss of crop sales and incurring unjustified accruing interest at $49.00/day.

33. After the DOJ referred Defendants's account back to FSA actions are provided in Items 18 and 19. FSA will not curtail their conspiracy, as after the State Executive Director approved the Offer to Convey Security, FSA refused to provide an approved copy to Defendant's ex wife. Attorneys drafing new deeds provided that both copies were required before a new deed in favor of FSA will be provided. Despite this adverse decision was provided in letters to the Servicing official, Pixie Greer, State Executive Director, Rueben Flores and the Secretary of

Agriculture, Ann Veneman, refused to correct this adverse
decision and have never provided the Defendant or his ex wife
with an approved copy of Defendants ex wife's Offer to Convey
Security. Rather, FSA demand the Defendant to open an escrow
account with a timeframe that is not provided in the legal do-
cument, the Offer to Convey Security, nor has the discretionary
exception function authority to add conditions or time frames
to a legal document without stipulations, signed and attached
to the original document as an amendment. No party, even Judge
King has the power to include conditions and time frames not
provided within a legal document at the time of offer and accep-
tance. This is harrasement as the escrow agencies involved in
title transfer provided that an escrow account is not required
to just transfer title and would be a waste of funds to do so.

34. Defendant would challenge FSA officials, U.S.
Attorney, Edward Kubo and his paralegal Lisa Yoshimura to pro-
vide the authority that allowed to pursue their actions. None
responded and for FSA officials is an adverse decision. For
officials of the United States Department of Agriculture includes
Pixie Greer, servicing official, Steve Bazzell, Farm loan chief,
Henry Fong, District Director, Rueben Flores, State Executive
Director, Butch Miller Administrative Officer, Civil Rights In-
dependant Review Group, Robert Simmons, Regional Attorney (OGC),
and Ann Veneman, Secretary of Agriculture (had Carolyn Cooksie
Deputy Administrator, Farm Loan Programs to respond on her behalf
would not address issues raised).

35. 7 C.F.R § 1804.51-53(1947); Imposed a duty on

10

FSA officials to see that a borrower's complaint was ultimately resolved administratively.

36.  On June 3, 2004 Defendant submitted his proposal to resolve the Homestead Protection issue after the failed attempt of the DOJ to sell Defendant's property without authorization. A memo from Farm Loan Chief, Steve Bazzell, dated June 4, 2004 to Pixie Greer, servicing official is his statement; "I would not address any of his allegation or acknowledge his proposal". Followed by the State Executive Director's letter dated June 30,2004 to Defendant provides in part, "You would remain on your farm and your remaining balance would be cancelled".

37.  Defendant's proposal as provided;

After Homestead Protection is provided, and after the fair market value is applied to my outstanding FO/OL loans, the balance is to be cancelled.

The date FSA acquires the deed to the property, loan payments shall commence 1 year from that date. (1 year that DOJ attempted to sell my property illegally, crop sales for a year far exceed the lease payment of $6,000.00)

38.  When FSA rejected Defendant's proposal, filed an appeal to the Secretary of Agriculture and requested Ann Veneman and the National Appeals Division (NAD) to provide a decision on his complaints.

39.  Ann Veneman, the Secretary of Agriculture will not respond personally and will delegate Carolyn Cooksie, Deputy Administrator, Farm Loan Programs to resond on her behalf.

40.  7 U.S.C. § 6992(b)(1), (c); 7 c.f.r. § 11.2 (2003),

11

provides; the Secretary of Agriculture, whose authority over
NAD may not delegated to any other USDA officer or employee.
The Secretary of Agriculture has the authority to override
the NAD Directors decision and may include its own. USDA's
National Appeals Division Procedures and Practice provides
that the NAD director determines if there are adverse decisons
and whether they are appealable.

41. Ann Veneman the Secretary of Agriculture abused
her authority in delegating Carolyn Cooksie to respond on her
behalf would provide two unauthorized decisions. Ms. Cooksie
provides that there were no adverse decision within my com-
plaint,  therefore an appeal to NAD is unauthoriized.

As provided in Item 40. its the NAD director who
determines if there are any adverse decisions in a complaint,
not the Deputy Administrator of Farm Loan Programs and any
appellant need not obtain approval to appeal to NAD as provisions
provide that a party has the option to appeal at the local level
or lodge an appeal directly to NAD.

42.  Ms. Cooksie in response to Congressman Ed Case
provides; "He was afforded all authorized appeal rights prior
to this action being taken". This is spite that Ms. Cooksie has
Defendant's files and cannot provide evidence of notice and
appeal rights provided in Item 6. She further adds, "At this
point, the case has been referred to the DOJ for action, an
admission of her unauthorized action as Deputy Administrator
of Farm Loan Programs, follows.

Ms. Cooksie's referring Defendant's account to the DOJ
is for a civil action or judicial foreclosure. As Deputy
Administrator of Farm Loan Programs  displays that the cor-
ruption extends from the servicing official to its top ex-
ecutive the Secretary of Agriculture. Ms. Cooksie in her
official capacity should be knowledgable of the regulations
referenced within and her actions can be described as a cover
up or totally ignorant of the regulations governing the farm
loan programs.

     43. Ms. Cooksie's action is an adverse decision and
must abide by USDA's own  regulations as provided in Items 11
and 12. Did not provide any notice of pursuing foreclosure and
denied the Defendant of his USDA's administrative appeal rights,
denied his U.S. Constitutional procedural due process rights,
Amend. V, note 86 & 87. and not providing notice denied the
Defendant of his Civil Rights of his right to apply for deferral
relief a program provided by Congress and covered by the Consti-
tution of protected benefits.

     44. The reason the Homestead Protection was never
consummated is from the adverse decision as provided in Item
33 and Ms. Cooksie has no authority to abolish the Homestead
Protection Program Agreement offered and accepted on 30 Jan
04 at her whim, to proceed in her unauthorized referral to
the DOJ to pursue foreclosure. Item 7 of this legal document
provides; "If the term of the lease has not begun on or before
2 years from the date of this agreement (30 Jan 04), the agree-
ment shall end and be of no further force or effect".

45. Ms. Cooksie blocking Defendant's appeal request through Secretary of Agriculture has denied the Defendant to exhaust his administrative appeals rights and without re-solving the Homestead Protection issue and referring the account to the DOJ for foreclosure has not conformed with the following.

45. FLB of Omaha v. Doyle & Donna Schrader, Equity No. 20630; 12 C.F.R. § 614.4510(1) Forebearance Requirements; All genuine issues of material fact must be resolved before foreclosure can be granted. Defendant's Homestead Protection is an issue of material fact that was unresolved when Ms. Cooksie decided to refer Defendant's account to the DOJ for foreclosure.

46. As Ms. Cooksie blocked Defendant's appeal requested through the Secretary of Agriculture, therefore prevented the Defendant from exhausting his appeal rights violated 7 C.F.R. § 1955.15 Appeals; Foreclosure action will be held in abeyance while an appeal is pending.

47. 7 C.F.R § 1955.15 also provides in part; "and any appeal must be concluded". This wasn't possible as Mr. Cooksie blocked Defendant's appeal from NAD as she made an unauthorized adverse decision by concluding that there were no adverse de-cisions in Defendant's complaint, therefore an appeal to NAD was unauthorized. As provided in Item 40, its the NAD director that determines if there are any adverse decisions and Defen-dant may appeal directly to NAD without any authorization from

14

the USDA/FSA officials.

48.  Ms. Cooksie will join the local FSA officials conspiracy to deny the Defendant the Homestead Protection that they have determined him eligible for and to sell his property, by denying the Plaintiff of his USDA's administrative appeals process, the U.S. Constitution procedural due process rights, Amend V, note 86 & 86 and his Civil Rights under 7 C.F.R. § 1901.202 and refusing  to acknowledge an adverse decision made by her subordinates that would resolve the Homestead Protection issue.

This issue is provided in Item 33, and Ms. Cooksie responding on the Secretary of Agriculture, Ann Veneman's behalf was in access to Defendant's letter to Ms. Veneman, dated September 24, 2004, that provides; "After FSA approves the Homestead Protection, they have prevented completion of the process as they have provided me with an approved copy of the Offer to Convey Security, but have not to my ex-wife".

49.  Rather than attempting to correct this adverse decision and providing the Homestead Protection that was mandated by regulations to be provided to the Defendant on or near October 1, 2001, Ms. Cooksie will ignore  Item 35 and inform Congressman Ed Case she was referring Defendant's account to the DOJ for foreclosure, dated November 22, 2004.

50.  Without providing any notice or conforming to any of the regulations or court rulings provided within, Assistant U.S. Attorney Harry Yee will file an unauthorized frivolous foreclosure action on November 16, 2004.

51. Subsequent to Mr. Yee filing his unauthorized foreclosure, documents obtained through discovery provided that FmHA had withheld $115,000.00 from a $200,000.00 loan approved by this Court in Civil No. 85-0360. The second $200,000.00 Operational Loan was not disbursed to the Defendant on October 30, 1986 as instructed but piece mealed over a $2\frac{1}{2}$ year period, that prevented the Defendant to rebuild his 6 greenhouses damaged by Hurricane Iwa. In anticipation of funds forthcoming the Defendant incurred overdraft charges, continuous work stoppages from lack of materials and supplies and having to release his workers as Defendant could not afford to pay for idle time. When the final disbursement from the Operational Loan was provided on March 29, 1989, allowed to complete repairs to 3 of the 6 greenhouses that provided income to pay for operational, family living expenses and near total loan payments. Sacrifices in supplies and family essential needs allowed to keep loan payments current.

When Defedant requested additional funds, was informed all funds were disbursed despite $115,000.00 remained unobligated. Demanding Mr. Yee to provide an accounting of these loans are the true and correct copies of the disbursement from the Operational Loan that are attached hereto and incorporated by reference as Exhibit "A".

The only disbursement documented that Mr. Yee could provide to the $200,000.00 Farm Ownership LOan, a true and correct copy is attached hereto and incorporated by reference as Exhibit "B".

16

52.    The two $200,000.00 loans, a $200,000.00 Farm
Ownership Loan and a $200,000.00 Operational Loan is provided
in an excert of Bank of Hawaii's Motion to Compel Farmers Home
Administration to Finalize Loans in Accordance with Settlement
Agreement, dated September 17, 1986, a true and correct copy
is attached and incorporated by reference as Exhibit "C".

53.    The withholding of $115,000.00 defeated the pur-
pose of the loans that all parties in the settlement negoti-
ations agreed that the Defendant needed these total funds to
rebuild and become a successful operation. The  withheld funds
would have allowed Defendant to repair and place the 4th green-
house in full operational status and as crops were realized a
surplus of funds would accrue supplementing what remained of
the $115,000.00 and the 5th and 6th greenhouses would virtually
be all profits. As Defendant was focused on how to get his green-
houses repaired with the constant work stoppages and constant
concerns of defaulting did not request FmHA for an accounting
of the loans, and had he done so would have filed a Motion to
Compel, to Release the Remaining Funds as Provided by the Court.

54. Had the $115,000.00 been provided, the following
potential crop revenues for the ten years from 1900.  From actual
production from previously managed hydroponic farm, Defendant's
greenhouses would produce 17,600 lb/crop of European Cucumbers.
Each greenhouse would realize 3.5 crops/year and price obtained
was $.90/lb  that provided $55,400 in annual  sales for each
of the six greenhouses. The potential lost sales is $3,326,400.00.
Sufficient to have paid of Defendant's loans.

55.   Prior to Mr. Yee filing his unauthorized fore-
closure, Defendant attempted to have his USDA administrative
due process rights, his U.S. Constitutional procedural due
process rights and his Civil Rights restored and lodged his
complaints with U.S. Senator Daniel Inouye, U.S. Attorney
General, John Ashcroft, and twice to President Bush. The res-
ponse to Senator Inouye's inquiry was provided with rhetoric
that had no relevance to the issues raised by the Defendant.
John Ashcroft resigned, relieving any need to respond. The
request from the White House to the DOJ and DOA were non-
responsive and when U.S. Attorney of Honolulu, Edward Kubo
was provided letters from the Criminal Division of the U.S.
Attorney Generals Office and from the White House to respond
to Defendant Homestead Protection issue, did not respond at
all.

56.   Mr. Yee's unauthorized frivolous foreclosure
was heard before Judge King and would also ignore conditions
provided herein that prohibited foreclosure and issued a fore-
closure judgment in favor of USDA/FSA, ruled that Defendant
had failed to comform to conditions and time frame not au-
thorized and instructed the sale of the property he had pro-
vided to USDA/FSA without their approval and against regula-
tions that are on appeal with the 9th Circuit Court of Appeals.

57.   Despite all the regulations and court rulings
provided in Item 7 . Judge King provided that the Defendant's
testimony was not credible, in providing his foreclosure judg-

ment and his Conclusions of Law are flawed and lacks any
credibility as Judge King does not provide any precedent for
his foreclosure judgment or his Conclusion of Law. There are
many cases other than provided by Defendant in Item 7, that
obviously Judge King did not research, but am confident that
the 9th Circuit Court of Appeals will review.

     58.   The second issue that the 9th Circuit Court of
Appeals will address is Judge King's Conclusion of Law as he
provides; "he did not open the required escrow account by July
2, 2004". The offer to Convey Security is a legal document  and
FSA and the Defendant are bound to the conditions provided within.
There are no  opening of an escrow account requirement or any time
frame within this document. FSA officials do not have the discre-
tionary function exception authority to demand conditions or time-
frames to any legal document after an offer an acceptance unless
stiputated, signed and attached to the original document as an
amendment. Judge King has no authority imposing such conditons
to any legal document unless provided. The Supreme Court in Dale-
hite v. U.S. 345 U.S. 15, provided that the discretionary function
exception includes "determination made by executives or adminis-
trators in establishing plans, specifications, or schedules of
operation", and this exception is not available at the operational
level.

     59.  Judge King in his Judgment and Interlocutory Decree
of Foreclosure provides; "The mortgages shall be and are hereby
foreclosed as prayed for, and the property covered by the mort-
gages shall be sold at public auction in a manner authorized

by law". Mr. Yee has provided in his Complaint; "this civil action by Plaintiff UNITED STATES OF AMERICA (hereinafter referred to as Plaintiff), for the benefit and credit of the United States Department of Agriculture, Farm Service Agency".

Therefore, when Judge King provided his foreclosure on the mortgages, it was for the benefit of USDA and he has no authority to sell the property without their request or approval. This will be another issue that will be addressed by the 9th Circuit Court of Appeals. No Judge has the authority to sell any agency's, entity or persons property after granted a foreclosue without their approval. Its the agency's, entity's or person's discretion whether they desire to maintain the property or to sell it, not the courts.

60. In lieu of the title to Defendant's property is Judge King's  foreclosure judgment and the USDA acquired title on June 19, 2006.

61. 7 C.F.R. § 1951.911 (B)(iii); "When the agency acquires title to the farm property, the borrower will be sent Exhibit M of this subpart, by certified mail, return requested, no later than the date of acquisition". (date of acquisition June 19, 2006)) FSA never provided any notice.

62. FmHA Instruction 1951-S, Exhibit A, Attachment 1, Page 7, IV, 5); "If FSA has already taken your property, you must apply within 30 days of the date FSA took your property".

63. 7 USCS § 2000 (b); "Occupancy of homestead  upon foreclosure.." (1) "The Secretary or the Administrator shall

20

on application by a borrower-owner who meets the eligibility
of subsection (c)(l), permit the borrower to retain possession
and occupancy of homestead property under the term set forth..".

(A) "apply for such occupancy not later than 30 days
after the property is acquired by the Secretary or Administrator".

64. On July 12, 2006 Defendant requested to apply
for the Homestead Protection after the USDA acquired Defendant's
property through foreclosure  pursuant to Items 58 and 59, and
requested an application form.

65. FSA did not comply with Items 11 and 12 nor
7 C.F.R § 1910.4 that provides that any one requesting an ap-
lication will be provided Exhibit A.

66. FSA's  adverse decisions again deny the Defen-
dant's USDA administrative due process rights, his U.S. Con-
stitutional due process rights and violates his Civil Rights.
Their stalling tactics were intended to deny the Defendant
to apply for the Homestead Protection within the 30 day time-
limit and before the property was auctioned off on September
19,2006.

67. The Defendant provided the Commissioner appointed
to auction off Defendant's property with regulation, 7 C.F.R
§ 1951.907; "Any servicing request will be processed as in-
dicated in § 1951.909. The account will not be liquidated until
the borrower has the opportunity to appeal any adverse decision".
The  Commissioner provided Mr. Yee with this information and
Mr. Yee refused to cancel the auction.

68. Defendant would file for bankruptcy on 8 Sept
06 in order to assure the National Appeals Division would have

the opportunity to address Defendant's appeal. Had the
Defendant not filed for bankruptcy the property would have
been sold  as NAD provided they had accepted my appeal but
their notice was received subsequent to the auction date.

69. Mr. Yee and the Defendant would file their
separate Motion for Relief of Stay. Mr. Yee's was to be
provided to pursue another auction, while the Defendant's
requested that the National Appeal Division be allowed to
address Defendant's appeal and bar Mr. Yee from pursuing
another auction while the appeal is in process. Judge  Robert
J. Faris granted Defendant's Motion and advised Assistant
U.S. Attorney Edric M. Ching, replacing Mr. Yee to draw up
the order, upon which Mr. Ching drew up orders not providing
the conditions that Defendant requested in Motion by elimin-
ating the barring of another auction during Defendant's appeal.
and provided another granting Mr. Yee's Motion to pursue an-
other auction. Mr. Ching's letter a true and correct copy
is attached hereto and incorporated by reference as Exhibit
"D" and Defendant's letter, a true and correct copy is attached
hereto and incorporated by reference as Exhibit "E"

70. Defendant was restored his USDA administrative
due process rights, his U.S. Constitutional due process rights
and his Civil Rights for an instant and taken away by the Bank-
ruptcy Court as had FSA officials, Mr. Yee and Judge King as
Mr. Yee would be allowed to pursue another auction before
Defendant's appeal was heard and the property was auctioned
off on Janurary 9, 2007.

22

71.   Defendant received notice from Ms. Elizabeth M. Webb, Hearing Officer from the National Appeals Division, Western Regional Office, that provided that after conducting the prehearing conference, she did not have jurisdiction to conduct a hearing on Defendant's appeal, and provided the Notice of Right to Request Director Review and the Request for Director Review.

72.   Defendant will file the Request for Director Review and this Affidavit is provided in support for this Court to grant a Temporary Restraining Order to restore Defendant's USDA Appeals rights, his U.S. Constitutional due process rights and his Civil Rights that have been denied by USDA/FSA officials, U.S. Attorney's Office of the DOJ, Judge King and Judge Faris of the Bankruptcy Court.

73.   The parties in Item 72 has denied the Defendant the Homestead Protection Program that was mandated to be provided to the Defendant on or near October 1, 2001, have denied the Defendant his appeal rights to a program that allows the Defendant to lease back the property with the option to repurchase before the five year lease ends.

74.   Defendant 's right to Request for Dirctor Review is provided is provided by 7 U.S.C.A. § 6998(a); 7 C.F.R. § 11.9(a)(1)

75.   Defendants right to Reconsideration of Director's determinations is provided by 7 C.F.R § 11.11(a).

76.   Defendant's right to Judicial Review is provided by 7 U.S.C.A. § 6999; 7 C.F.R. § 11.13(a)

77.  As each level of appeal, a determination will
be provided within 30 business days, translates to 42 days
or 5 weeks. Irreparable loss would occur if the auction sale
is confirmed by this Court as Defendant will be denied the
opportunity of the Homestead Protection, therefore there
will be the loss of his livihood and his option to repurchase
the property that would not be availble if the auction sale
is confirmed before allowing the Defendant to exaust his appeal
remedies.

78.  Defendant's rights provided by USDA's appeal
process, his rights under the U.S. Constitutional due process
rights, Amend. V, note 86 & 87 and his Civil Rights should be
respected, honored and protected, and the Defendant must be
allowed to exaust all remedies before any confirmation of sale
of Defendant's property auctioned on January 9, 2007 be reviewed.


Further Affiant sayeth naught.


THOM SHIRAISHI PRO SE


Subscribed and sworn to before me
this 29th , day of Janurary 2007.

PATRICIA S. KESHI-LALIO

Notary Public, State of Hawaii
My Comission expires: 6/11/2010